UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEON DANGELO JACKSON,

                    Petitioner,

v.                                              CASE NO.  04-CV-72932-DT
                                                HONORABLE DENISE PAGE HOOD

ANDREW JACKSON,

                    Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Deon Dangelo Jackson has filed a *pro se* habeas corpus petition under 28

U.S.C. § 2254 and a motion for an evidentiary hearing on his sentencing claim.  Respondent

urges the Court to deny the habeas petition on the grounds that the claims lack merit or are

procedurally defaulted.  The Court agrees.  Therefore, the habeas petition will be denied.

## I. Background

Petitioner was charged in Wayne County, Michigan with four counts of assault with

intent to commit murder, possession of a firearm during the commission of a felony, and felon in

possession of a firearm.  The charges arose from an incident in Detroit on January 17, 2000,

when Dawntra Young parked her car in front of Petitioner's home.  Seated next to Dawntra in

the car was a child named Bob Long, whom Dawntra was babysitting.  Seated directly behind

Dawntra in the back seat was her brother, Aaron Williams.  Dawntra's infant son, Richard

Haygood, sat next to Aaron in the back seat.  A second car containing Petitioner's mother,

Shirley Griffith, and Petitioner's stepfather, Calvin Griffith, pulled up behind Dawntra's car.

The two groups of people were there to pick up Aaron Williams' clothes.  Aaron had been living

with Petitioner and Tiffany Williams, who was Petitioner's girlfriend and the sister of both

Aaron Williams and Dawntra Young.  Aaron had moved out of Petitioner's and Tiffany's home a

few days earlier at Petitioner's request.

On the day in question, Shirley Griffith got out of the second car and went to Petitioner's

side door to pick up Aaron's clothes.  Tiffany Williams came out the front door of the house with

a bag of clothes and put them by the curb.  Petitioner exited the front door of the house with a

club in his hand.  He approached the driver's side of the first car, pulled a gun from his

waistband, and started shooting at the car.  Aaron Williams was shot and injured during the

incident.  Petitioner left the scene in his stepfather's car, but turned himself into the police on the

following day.

On the first day of trial, Petitioner waived his right to a trial by jury.  The prosecutor

proceeded on the theory that Aaron Williams went to Petitioner's home to retrieve his clothes

and that Aaron or his sister Dawntra Young had solicited the Giffiths' help to avoid any

problems.  The prosecutor maintained that Petitioner knew in advance that Aaron was coming

over and, when he saw the cars approach his home, he ran outside with a club and gun and fired

the gun without any provocation from the occupants of the car.

After the prosecution rested, defense counsel moved for a directed verdict of acquittal.

Judge Evans granted the motion in part by dismissing count six (felon in possession of a firearm)

and by reducing the two charges against the children to assault with intent to commit great

bodily harm less than murder.

Petitioner then testified and admitted shooting toward the back of the car where Aaron

Williams had been seated.  The defense was that he fired in self defense or in defense of others.

2

His attorney argued in the alternative that Petitioner should be convicted of a lesser offense because he lacked the necessary intent to be found guilty of assault with intent to commit murder.      On June 19, 2000, the trial court found Petitioner guilty of one count of assault with intent to murder for the assault on Aaron Williams, MICH. COMP. LAWS § 750.83, three counts of assault with intent to commit great bodily harm less than murder for the assaults on Dawntra Young, Bob Long, and Richard Haygood, MICH. COMP. LAWS § 750.84, and one count of felony firearm, MICH. COMP. LAWS § 750.227b.  The court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of seventeen to fifty years in prison for assault with intent to commit murder and three to ten years for each assault with intent to commit great bodily harm less than murder.

Petitioner raised six of his seven habeas claims in a motion for new trial.  The trial court held an evidentiary hearing on the claims and then denied Petitioner's motion.  Petitioner raised all his habeas claims in an appeal of right.  The Michigan Court of Appeals was unpersuaded by the claims and affirmed Petitioner's convictions and sentence in an unpublished opinion.  *See People v. Jackson*, No. 229097, 2002 WL 31104993 (Mich. Ct. App. Sept. 20, 2002).  On July 28, 2003, the Michigan Supreme Court denied leave to appeal.  *See People v. Jackson*, 469 Mich. 860; 666  N.W.2d 671 (2003) (table).

Petitioner filed his habeas corpus petition on August 3, 2004.  The grounds for relief read:

> I.      The trial court abused her discretion in denying Mr. Jackson's request for a new trial where his waiver of the right to trial by jury was not voluntary, knowing, or intelligent under US CONST AM, XIV; CONST 1963, ART 1 §§ 17, 20.

> II.     Mr. Jackson's conviction for assault with intent to murder must be

3

reversed where the trial court's factual findings are clearly erroneous, the evidence was insufficient in violation of Mr. Jackson's due process rights under US CONST, AMS V, XIV and MICH CONST 1963, ART 1, §§ 17, 20 where the verdict was against he weight of the evidence.

III.    Mr. Jackson's convictions for assault with intent to commit great bodily harm must be reversed where the trial court's findings are inconsistent with the evidence, the verdicts were against the great weight of the evidence and also were based on insufficient evidence in violation of Mr. Jackson's due process right under US CONST AMS V, XIV and MICH CONST 1963, ART 1 §§ 17, 20.

IV.    The trial court denied Mr. Jackson's state and federal due process rights to a fair trial where it improperly intervened in the examination of a number of witnesses and in effect assumed the role of the prosecutor.

V.    The prosecutor denied Mr. Jackson's state and federal rights to due process and a fair trial under US CONST, AMS V, XIV, MICH CONST 1963, ART 1, § 17 when she improperly asked Mr. Jackson to comment on the credibility of other witnesses and improperly elicited testimony regarding Mr. Jackson's alleged prior bad acts.

VI.    Defense counsel's errors and omissions denied Mr. Jackson his state and federal constitutional right to the effective assistance of counsel under US CONST, AMS VI, XIV; MICH. CONST 1963, ART 1 §§ 17, 20.

VII.    The trial court should have amended the judgment of sentence to remove the habitual offender 2nd offense designation where the prosecutor made no showing that Mr. Jackson had previously been convicted of a felony and the court made no such finding.

Because Petitioner did not file a brief with his habeas petition, the Court has looked to his state appellate brief as support for his claims.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### III. Discussion

### A. Waiver of the Right to a Trial by Jury

The first habeas claim alleges that Petitioner's waiver of his right to a jury trial was not voluntary, knowing, and intelligent. "Because the right to a jury trial is fundamental, *Duncan v.*

5

*Louisiana*, 391 U.S. 145, 154 (1968), [Petitioner's] waiver of that right -- to be valid -- must have been knowingly, intelligently and voluntarily made. *Edwards v. Arizona*, 431 U.S. 477, 482 (1981)." *Filliaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006). "[B]efore any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970). *Patton* leaves "no room for doubt that a determination of guilt by a court after waiver of jury trial could not be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942). Consequently, Petitioner "has the burden of demonstrating that he did not expressly and intelligently consent to waive a jury trial and that the [state court's] judgment to the contrary is either an unreasonable application of clearly established Supreme Court precedent or contrary to that precedent, or resulted from an unreasonable interpretation of the evidence presented to the state courts." *Filliaggi*, 445 F.3d at 855.

"A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right." *Lott v. Coyle*, 261 F.3d 594, 615 (6th Cir. 2001) (citing *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983)). The defendant must understand "that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *United States ex rel. Williams v. De Robertis*, 715 F.2d 1174, 1180 (7th Cir. 1983). "[C]olloquies are not constitutionally required," and "an extremely perfunctory waiver with no

6

colloquy" is constitutionally adequate. *Sowell v. Bradshaw*, 372 F.3d 821, 834 (6th Cir. 2004) (citing *Martin*, 704 F.2d at 274-75), *cert. denied*, 544 U.S. 925 (2005). Furthermore, courts must give "presumptive force" to written waivers of a jury trial. *Spytma v. Howes*, 313 F.3d 363, 371 (6th Cir. 2002).

On the first day of trial, defense counsel (Mark Satawa) informed the trial court after a break in the *voir dire* proceedings that he and Petitioner had discussed waiving the jury. Mr. Satawa asserted that Petitioner had asked some intelligent questions during their discussion and that he had been given ample time to think about the matter. Mr. Satawa assured the trial court that he did not suggest to Petitioner what the verdict would be if he waived his right to a jury trial. He also claimed that Petitioner understood that he had an absolute constitutional right to a jury trial and that he should not expect any particular verdict. (Tr. June 7, 2000, at 17-18.)

Petitioner then engaged in a colloquy with the trial court. He assured the trial court that he understood he had a constitutional right to a jury trial and that the trial court would be the trier of fact. He claimed to have made the decision of his own free will and he stated that no one promised him anything or coerced him into waiving his right to a jury trial. The trial court concluded that Petitioner's waiver was knowingly, voluntarily, and intelligently made. (*Id*. at 19-20.)

At the post-conviction evidentiary hearing, Petitioner testified that Mr. Satawa had said the trial court would find him guilty of assault with intent to do great bodily harm less than murder if his waived his right to a jury trial. Petitioner further testified that Mr. Satawa informed him that the sentence for assault with intent to do great bodily harm was three to ten years and that his sentence would be no more than ten years. Petitioner claimed that he had tried to ask the

7

trial court during their colloquy whether this was true, but the trial court had interrupted him. He asserted that he would not have given up his right to trial by jury if he had known that it was possible to be convicted of assault with intent to commit murder. (Tr. July 17, 2001, at 4-7, 18-22.)

Mr. Satawa testified at the evidentiary hearing that he had advised Petitioner that the trial court would be fair to Petitioner and that Petitioner probably had a better chance of getting convicted of a lesser charge from the court than from a jury. Mr. Satawa denied making any promises to Petitioner, although he admitted that he told Petitioner that the trial court might be more lenient at sentencing if he waived his right to a jury trial. (Tr. June 6, 2001, at 54-59.)

The trial court opined that Petitioner gambled on being convicted of lesser charges, knowing that he had a constitutional right to a jury. (*Id*. at 13-17.) The trial court believed that Petitioner relied on his attorney's advice and hoped to be found guilty of something less than assault with intent to commit murder, but that Mr. Satawa did not actually promise Petitioner that the court would find him guilty of a lesser crime. (Tr. Aug. 16, 2001, at 32.)

The Michigan Court of Appeals noted that Petitioner signed a written waiver of jury trial and "unequivocally testified on the record that there had been no promises of leniency, threats, or coercion." The court of appeals stated that Petitioner's assertion of illusory promises of leniency was contrary to the record made in open court and had to be rejected. The court of appeals concluded that the trial court did not err by accepting Petitioner's waiver of a jury trial, nor abuse its discretion by denying Petitioner's motion for a new trial on that basis.

To summarize, Petitioner claimed to understand his right to a jury trial and he informed

8

the trial court that his decision was voluntary.  Furthermore, the trial court found Mr. Satawa's

testimony at the evidentiary hearing to be more credible than Petitioner's testimony.  Witness

credibility is clearly the province of the factfinder, not a federal habeas court.  *Tyler v. Mitchell*,

416 F.3d 500, 505 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1774 (2006).

The Court concludes that the state appellate court's decision was not an unreasonable

application of clearly established federal law.  Petitioner has no right to relief on the basis of his

first claim.

### B.  Sufficiency of the Evidence

Petitioner's second and third claims challenge the sufficiency of the evidence supporting

Petitioner's convictions for assault with intent to commit murder and assault with intent to

commit great bodily harm less than murder.  Petitioner contends that the trial court's factual

findings were clearly erroneous and that the verdict was against the great weight of the evidence.


The critical inquiry on review of the sufficiency of the evidence to support a criminal

conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a
> reasonable doubt.  [T]his inquiry does not require a court to 'ask itself whether *it*
> believes that the evidence at the trial established guilt beyond a reasonable doubt.'
> Instead, the relevant question is whether, after viewing the evidence in the light
> most favorable to the prosecution, *any* rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted)

(emphasis in original).  This "standard must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law," *id*., 443 U.S. at 324 n.16, and through

the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

9

> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

### 1. Assault with Intent to Murder

Petitioner alleges that there was insufficient evidence that he assaulted Aaron Williams with intent to kill Aaron. In Michigan, "[t]he elements of assault with intent to commit murder are (1) an assault, (2) with the specific intent to commit murder, (3) which, if successful, would make the killing murder." *People v. Beard*, 171 Mich. App. 538, 541; 431 N.W.2d 232, 233 (1988). Intent to kill for purposes of this offense may be inferred from any facts in evidence. *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Hoffman*, 225 Mich. App. 103, 111; 570 N.W.2d 146, 150 (1997)). When determining intent, courts may take into consideration

> the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*Id*. (quoting *People v. Taylor*, 422 Mich. 544, 568; 375 N.W.2d 1, 8 (1985).

### a. The Evidence

The Michigan Court of Appeals summarized the evidence as follows:

[C]omplainant Aaron Williams moved in with his sister, Tiffany Williams, and her boyfriend, [Petitioner], in a house owned by [Petitioner's] mother. After a

10

few months, [Petitioner] and the complainant began having conflicts, and the complainant was told to leave.  The complainant moved in with a different sister, Dawntra Young.  Shortly thereafter, the complainant and Tiffany had an argument and physical altercation, wherein the complainant struck Tiffany, resulting in noticeable injuries.  Three days later, the complainant called Tiffany and made arrangements to come to [Petitioner] and Tiffany's home to retrieve his belongings.  At Young's request, [Petitioner's] mother called the house and asked Tiffany to place the complainant's belongings on the curb.  Young drove the complainant to [Petitioner's] house; an eight-year old child was seated in the front passenger seat, and the complainant and Young's two-week-old child were seated in the back.  [Petitioner's] mother and stepfather followed the complainant and Young to [Petitioner's] house in a separate car to eliminate the possibility of any trouble.

After the cars arrived at [Petitioner's] home, Young parked on the street with all of her passengers, including the complainant, remaining in the car, while [Petitioner's] mother knocked on the side door.  At that point, [Petitioner] charged toward Young's car, with a club raised in the air and a gun hidden in his waistband underneath his shirt.  [Petitioner's] mother testified that [Petitioner] yelled, "come on out man and do what you said you was going to do to me."  At this time, the complainant was still seated in the back of the car.  Once [Petitioner] was within a few feet of the car, he dropped the club, pulled the gun from his waistband, fired one shot into the back tire, and then fired numerous shots into the front and back of the car, until the weapon was unloaded.  [Petitioner], himself, testified that he shot two or three times into the back car door, "[b]ecause that's where [the complainant] was sitting."  The complainant was shot in the arm and the spine and, as a result, was left without the use of his lower extremities.

*Jackson*, 2002 WL 31104993, at *2 - 3.

These facts are supported by the record, and they establish the elements of assault with intent to murder.  Petitioner assaulted Aaron Williams by shooting at him.  The intent to kill can be inferred from the use of a deadly weapon.  Had Petitioner killed Aaron, he could have been charged with murder because his conduct demonstrated an intent (actual or implied) to kill and the circumstances did not excuse or mitigate the offense.  *Cf. People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971).

11

### b.  Defense of Self and Others

Petitioner contends that the trial court erred in finding that he did not act in self-defense, in defense of others, or in the heat of passion.  Petitioner based his defense on the fact that the tension between Aaron Williams and himself was high because Aaron had made a threat against him, had assaulted his girlfriend a few days earlier, and was known for being violent and assaultive against family members.  In addition, Petitioner claims that he saw Aaron reach for something under the car seat.

The trial court found that Petitioner's claim about Aaron reaching under the seat was not credible, because only Petitioner and his girlfriend testified that the car door was open.  The trial court's factual finding on the credibility of witnesses is entitled to deference because Petitioner has not rebutted the presumption with clear and convincing evidence.  28 U.S.C. § 2254 (e)(1); *see Matthews*, 319 F.3d at 788.  Moreover, the trial court's findings of fact are supported by the record.  Aaron Williams testified that he did not get out of the car or reach for the door (Tr. June 7, 2000, at 82), and Petitioner's stepfather testified that the car doors were closed.  (Tr. June 12, 2000, at 52.)  The officer in charge of the case testified that there were bullet holes on the exterior of the car, but not inside the car.  (Tr. June 13, 2000, at 62-63 and 67.)

Petitioner's defense was not credible for additional reasons.  As explained by the Michigan Court of Appeals,

> [Petitioner], not the complainant, was the aggressor and . . . [Petitioner] was not in imminent danger.  [T]he complainant never exited the car and was unarmed, yet [Petitioner] left the safety of his home, rushed toward the car with a club, pulled out a gun, shot out the back tire thereby disabling the vehicle, and proceeded to fire numerous shots into the car.  In addition, there is no evidence that [Petitioner's] actions were in defense of Tiffany, who was standing on the front porch, which was more than thirty-five feet from the car.  Even if [Petitioner] had reason to fear the complainant because of prior threats or assaults, that does not

12

excuse the requirement that he be in *imminent* danger *at the time* of the use of deadly force.

*Jackson*, 2002 WL 31104993, at *3 (emphasis in original).

The evidence adduced at trial was sufficient for a reasonable trier of fact to conclude that the prosecutor proved the essential elements of assault with intent to murder. Therefore the state appellate court's conclusion that the evidence was sufficient to sustain the conviction and to disprove Petitioner's defense was not an unreasonable application of *Jackson*, nor an unreasonable determination of the facts.[1]

### 2. Assault with Intent to Commit Great Bodily Harm Less than Murder

Petitioner claims that there was insufficient evidence that he assaulted Dawntra Young, Bob Long, and Richard Haygood with intent to do great bodily harm less than murder. He asserts that there was no evidence of any intent to hurt the children in the car, nor any evidence that he knew they were in the car. At most, he claims, the evidence supported convictions for reckless or wanton use of a firearm.

"The elements of assault with intent to do great bodily harm less than murder are: '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.'" *People v. Brown,* 267 Mich. App. 141, 147; 703 N.W.2d 230, 236 (2005) (quoting *People v. Parcha,* 227 Mich. App. 236, 239; 575 N.W.2d 316, 318 (1997)) (emphasis and footnote omitted). The intent to do great bodily harm has been defined as "'an intent to do serious injury of an aggravated nature.'" *Id.* (quoting *People v. Mitchell,* 149 Mich. App. 36, 39; 385 N.W.2d 717, 718 (1986)).

---

[1] The Michigan Court of Appeals did not cite *Jackson* in its opinion, but it used the same standard.

13

The Michigan Court of Appeals opined that Petitioner's "act of firing a handgun from close range numerous times into the car in which the three victims were seated was sufficient to infer that defendant intended to commit great bodily harm." *Jackson*, 2002 WL 31104993, at *4. The court of appeals concluded that "[t]he evidence was sufficient to sustain [Petitioner's] convictions for three counts of assault with intent to do great bodily harm." *Id.*

This Court agrees. Dawntra Young testified that Petitioner moved his hand from side to side as he fired the gun at the car. The gun was pointed at her, and she thought that Petitioner was trying to kill all the occupants of the car. (Tr. June 8, 2000, at 30 -34, 63, 71.) There was additional evidence that Petitioner's mother tried to prevent Petitioner from firing the gun, but he did not stop shooting until he ran out of bullets. Then he grabbed Dawntra Young, who exited the car after the shooting, and hit her in the back of the head with the gun.

A rational trier of fact could have concluded that Petitioner attempted to do corporal harm to Dawntra Young, Bob Long, and Richard Haygood with intent to do great bodily harm to them. Therefore, the state court's decision was not an unreasonable application of *Jackson*.

### C.  The Trial Court's Conduct

The fourth habeas claim alleges that the trial court deprived Petitioner of his right to due process and a fair trial when it intervened in the examination of a number of witnesses. Petitioner asserts that the trial court assumed the role of the prosecutor and elicited testimony that was damaging to the defense. In support of this argument, Petitioner has cited to the record and quoted a portion of the transcript where the trial court allegedly disparaged Tiffany Williams' lifestyle and character.

14

### 1. Procedural Default

Respondent argues that this claim is procedurally defaulted.  A procedural default is "a

critical failure to comply with state procedural law. . . ."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).

A constitutional claim is procedurally defaulted and barred from habeas review when:  (1) there

is a state procedural rule applicable to the petitioner's claim; (2) the petitioner failed to comply

with that rule; (3) the state courts actually enforced the state procedural sanction; and (4) the

procedural rule is an adequate and independent state ground on which the state can rely to

foreclose review of a federal constitutional claim.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986).  "Failure to comply with well-established and normally enforced procedural rules usually

constitutes 'adequate and independent' state grounds for foreclosing review."  *Lundgren v.

Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

### a.  Violation of State Procedural Rules

One of the state procedural rules in question here is Michigan's contemporaneous-

objection rule, which requires defendants in criminal cases to make an objection in the trial court

to preserve an issue for appellate review.  *See People v. Carines*, 460 Mich. 750, 761-65; 597

N.W.2d 130, 137-39 (1999).  "As a general rule, issues that are not properly raised before a trial

court cannot be raised on appeal absent compelling or extraordinary circumstances."  *People v.

Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  Petitioner violated this rule by not

objecting at trial to the trial court's frequent questioning of witnesses.

Petitioner also violated the state procedural rule that requires appellants to explain the

basis for their claims on appeal from their convictions.  *People v. Watson*, 245 Mich. App. 572,

587; 629 N.W.2d 411, 421-22 (2001).  "A party who seeks to raise an issue on appeal but who

15

fails to brief it may properly be considered to have abandoned the issue." *People v. Smith*, 439 Mich. 954, 954; 480 N.W.2d 908, 908 (1992).

### b.  Reliance on the Rules

The Michigan Court of Appeals relied on Petitioner's violation of the State's contemporaneous-objection rule by stating that it would review Petitioner's unpreserved claim for plain error.  A state appellate court's review for plain error constitutes enforcement of a procedural default.  *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

As for the other instances of improper questioning of witnesses, the court of appeals stated that, "[a]part from providing the transcript cites, defendant provides no explanation or argument concerning the propriety of the [trial court's] questions."  *Jackson*, 2002 WL 31104993, at *6.  The state court's reliance on Petitioner's procedural errors was adequate and independent because the rules were in effect and enforced before Petitioner's trial.  Therefore, the Court may not consider the substantive merits of Petitioner's claim unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### c.  "Cause"

Petitioner alleges that trial counsel was cause for his failure to object to the trial court's conduct.  Constitutionally ineffective assistance of counsel is "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Deitz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004). However, to prevail on an ineffectiveness claim, Petitioner must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*

16

*v. Washington*, 466 U.S. 668, 687 (1984).  To determine whether defense counsel was ineffective, the Court must look at Petitioner's underlying claim about the trial court.

### 2.  The Underlying Claim

The trial court's role in a criminal trial is that of "governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. " *Quercia v. United States,* 289 U.S. 466, 469 (1933).  Generally, however, "unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction." *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985) (quoting *Brinlee v. Crisp,* 608 F.2d 839, 853 (10th Cir.1979)).  "To violate a defendant's right to a fair trial, 'a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree.'" *Id.* (quoting *Daye v. Attorney General of New York,* 712 F.2d 1566, 1572 (2d Cir. 1983)).

> [T]he right of the trial judge to participate in the proceedings and to interrogate witnesses is not an unlimited one.  Such participation should be exercised in conformity with the standard governing the judicial office.  The judge should exercise self-restraint and preserve an atmosphere of impartiality.  When the remarks of the judge during the course of a trial, or his manner of handling the trial, clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties for the purpose of furthering or supporting the contention of such party, the judge indicates, whether consciously or not, a personal bias and prejudice which renders invalid any resulting judgment in favor of the party so favored.

*Knapp v. Kinsey,* 232 F.2d 458, 465-67 (6th Cir. 1956) (internal citations omitted).

"Trial judges have wide latitude in conducting their trials . . . ." *Harrington v. Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997).  They must preserve an attitude of impartiality, *id.*, but they also must "insure that the issues are not obscured and to act at all times with a view toward

17

eliciting the truth." *United States v. Tilton*, 714 F.2d 642, 644 (6th Cir. 1983).

The Michigan Court of Appeals concluded that the trial court's questions to Tiffany Williams were proper because they were relevant to the claims and they helped to clarify ambiguities in Tiffany's testimony. The trial court's other questions also helped to clarify the facts and elicit the truth. The court did not display such hostility and bias against Petitioner and the defense witnesses that its judgment must be deemed invalid.

Furthermore, defense counsel likely made a strategic decision not to object, because the trial court was the trier of fact. Defense counsel understandably would not want to antagonize the trial court by suggesting that it was doing something improper. Although the trial court's questioning may have been excessive, the Court does not believe that defense counsel's failure to object to the trial court's questions amounted to deficient performance.

### 3. Prejudice; Miscarriage of Justice

The Court need not determine whether Petitioner has established prejudice as a result of the alleged constitutional error, because he has not shown "cause" for the error. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). He may overcome his procedural default, even in the absence of "cause and prejudice," by demonstrating that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not submitted any new evidence from which a reasonable factfinder could have concluded that he was not guilty of the offenses for which he remains convicted. Therefore, a miscarriage of justice will not occur as a result of this Court's failure to adjudicate the substantive merits of Petitioner's procedurally defaulted claim.

### D. The Prosecutor's Conduct

The fifth habeas claim alleges that the prosecutor deprived Petitioner of his right to due process and a fair trial when she asked him to comment on the credibility of other witnesses and elicited testimony of prior "bad acts."  Respondent argues that this claim is procedurally defaulted and meritless.

Petitioner violated Michigan's contemporaneous-objection rule by not objecting to the conduct in dispute.  The trial court relied on Petitioner's failure to object at trial when it adjudicated Petitioner's motion for new trial and stated that it was reviewing Petitioner's claim for plain error because he did not make a contemporaneous objection at trial.  (Tr. Aug. 16, 2001, at 38.)

The  Michigan Court of Appeals also relied on Petitioner's failure to object, stating that it would review the issue "for outcome-determinative plain error" because Petitioner "failed to timely object to the alleged prosecutorial misconduct."  *Jackson*, 2002 WL 31104993, at *6.  The Michigan Supreme Court did not set aside the lower courts' decisions and rule on the merits of Petitioner's claim; it merely denied leave to appeal.

Petitioner's failure to make a contemporaneous objection to the prosecutor's conduct was an adequate and independent state ground for foreclosing review because the rule was in effect and enforced before Petitioner's trial.  Petitioner, however, alleges that his trial attorney should

19

have objected to the prosecutor's conduct. The Court therefore must review Petitioner's underlying claim to determine whether defense counsel was constitutionally ineffective for failing to object to the conduct in question.

### 1. Asking Petitioner to Comment on Other Witnesses' Credibility

Petitioner contends that it was improper for the prosecutor to ask him on cross-examination and on re-cross examination whether other witnesses had lied when testifying. (Tr. June 19, 2000, at 42-43 and 57.) In Michigan, it is improper to cross-examine the defendant on the credibility of prosecution witnesses, because the defendant's opinion of the witnesses' credibility is not probative of the matter. *People v. Buckey*, 424 Mich. 1, 17; 378 N.W.2d 432, 440 (1985). The prosecutor even admitted at the evidentiary hearing that asking Petitioner about the truthfulness of other witnesses' testimony was improper. (Tr. Aug. 16, 2001, at 25.)

Nevertheless, the trial court was the trier of fact, and it stated at the evidentiary hearing that, although the question was improper, it did not consider the question and answer when making its findings of fact. (*Id.* at 39.) Furthermore, Petitioner handled the questions quite well. He stated that the witnesses were wrong about the car door being closed, and he explained the discrepancies in part by stating that his mother's memory was bad [2] and by implying that his stepfather had been unable to see because he was seated in his own car.

The prosecutor's questions about the credibility of prosecution witnesses did not prejudice the defense. Therefore, defense counsel was not ineffective for failing to object to the questions.

---

[2] There was some basis in fact for this comment. Petitioner's mother had previously testified that she sometimes did not remember how events unfolded when she was excited, as she was during the shooting incident. (Tr. June 13, 2000, at 46-47.)

### 2.  Other Acts Evidence

Petitioner alleges that the prosecutor improperly elicited testimony regarding his alleged prior bad acts of beating his girlfriend and selling drugs.

### a.  The Reference to Illegal Drugs

The topic of illegal drugs arose when the prosecutor asked Aaron Williams how he happened to reside with Petitioner and Aaron's sister Tiffany on Winthrop Street.  Aaron started to respond by saying that he had just got out of jail.  When the trial court interrupted Aaron to clarify a point, Aaron went on to say that Petitioner asked him to sell some dope for him at a house.  Aaron explained that, after Petitioner learned that Aaron had found a job, he offered to let Aaron stay with him and Tiffany.  (Tr. June 7, 2000, at 37-38.)

The prosecutor subsequently asked Aaron whether he ever resumed selling drugs for Petitioner, and she asked Petitioner whether he had wanted Aaron to sell drugs for him.    (Tr. June 7, 2000, at 39; Tr. June 19, 2000, at 33.)  Aaron, however, initially volunteered the disputed information, and the volunteered information was not necessary to answer the prosecutor's question.  Therefore, the prosecutor cannot be faulted for eliciting evidence of Petitioner's alleged involvement with drugs, and defense counsel was not deficient for failing to object to the prosecutor's questions.  The allegedly deficient performance did not prejudice Petitioner because the trial court apparently did not consider the evidence when making her decision in the case.  (Tr. Aug. 16, 2001, at 38-39.)

### b.  Evidence of Domestic Violence

Petitioner testified on direct examination that Aaron Williams had tried to get him to break up with Aaron's sister Tiffany.  (Tr. June 19, 2000, at 12.)  On cross-examination, the

prosecutor asked Petitioner whether it was true that Aaron had wanted Petitioner and Tiffany to break up because Petitioner beat Tiffany.  Petitioner responded that he did not understand or know what the prosecutor was talking about.  He stated that he and Tiffany were boyfriend and girlfriend.  (*Id*. at 34-35.)

Petitioner had a bench trial and the trial court presumably knew the applicable law on other acts evidence.  *People v. Sherman-Huffman*, 466 Mich. 39, 43; 642 N.W.2d 339, 341 (2002).  In fact, as previously explained, the trial court said that it was not affected by the prosecutor's references to Petitioner's alleged bad acts.  (Tr. Aug. 16, 2001, at 38-39).  Therefore, defense counsel's failure to object did not amount to deficient performance.

Petitioner's claim about "bad acts" evidence would have no merit even if it were not procedurally defaulted, because the Supreme Court has not explicitly addressed "prior acts" in constitutional terms.  *Bugh v. Mitchell*, 329 F.3d 496, 513 (6th Cir. 2003).  Therefore, admission of the evidence cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d)(1).  *Id*.

### 3.  Conclusion on Prosecutorial Misconduct Claim

Petitioner has failed to show that his attorney's failure to object to the prosecutor's conduct amounted to deficient performance and that his attorney's performance prejudiced the defense.  Therefore, ineffective assistance of counsel cannot be deemed "cause" for Petitioner's procedural default.  The Court need not determine whether Petitioner has established prejudice as a result of the alleged constitutional error, because he has not shown "cause" for the error. *Smith v. Murray*, 477 U.S. at 533.  The exception for miscarriages of justice does not apply because Petitioner has not produced any new and credible evidence of actual innocence.

22

Petitioner's prosecutorial-misconduct claim is procedurally defaulted and barred from substantive review.

## E.  Defense Counsel

The sixth habeas claim alleges that defense counsel's errors and omissions deprived Petitioner of his right to the effective assistance of counsel.  Petitioner alleges that his trial attorney failed to investigate and present evidence of Aaron Williams' aggressiveness and tendency to be violent.  According to Petitioner, defense counsel should have shown the severity of the injuries that Aaron inflicted upon his sister Tiffany Williams by producing the officer who took Tiffany's complaint and two other witnesses who could have testified about the extent of the injuries.   In addition, alleges Petitioner, defense counsel should have produced Aaron Williams' criminal history and evidence of Aaron's assaults on family members.  Petitioner claims that the additional evidence would have bolstered his defense that he feared Aaron Williams and it would have undercut Aaron's claim that he was not a threat to Petitioner. Petitioner also alleges that defense counsel should have objected to (1) a police officer's testimony that certain witnesses identified the shooter, (2) the prosecutor's misconduct, and (3) the trial court's misconduct.

To prevail on a claim of ineffective assistance, Petitioner must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  A reviewing court "must indulge a strong

23

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as

to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine confidence in the outcome." *Id*. at 694.

The Court has already addressed and rejected Petitioner's claim that defense counsel

should have objected to the trial court's questioning of witnesses and the prosecutor's alleged

misconduct. As for defense counsel's failure to object to the police officer's testimony about the

identity of the shooter, an objection likely would have been unsuccessful, because there was no

dispute that Petitioner was the shooter. He admitted that he fired two or three shots at Aaron

Williams. (Tr. June 19, 2000, at 24-25.) "[C]ounsel cannot be deemed ineffective for failing to

raise a meritless claim." *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).

The Court also finds no merit in Petitioner's claim that defense counsel should have

produced evidence of Aaron Williams' criminal record, history of aggressiveness, and violent

nature. Failure to investigate key evidence is inexcusable if the omission was the result of

inattention or negligence, not reasoned strategy. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003);

*Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992). However, Aaron Williams implied that

he had a criminal record when he mentioned being released from jail, and he admitted that he

slapped Tiffany Williams so violently that she was scarred by the incident. (Tr. June 7, 2000, at

24

47-48). Tiffany herself testified that Aaron struck her on the face with a belt. (Tr. June 8, 2000, at 169-70.)

Furthermore, although the evidence of Aaron's violent nature might have supported Petitioner's testimony that he was afraid of Aaron, it would not have supported his theory of self-defense. There was no evidence that Aaron was armed on the day in question or that he got out of the car when Dawntra Young pulled up in front of Petitioner's home. Petitioner, on the other hand, left the safety of his home, approached the car where Aaron was seated, and began shooting at the car. Petitioner was the aggressor in the shooting incident, and Aaron's allegedly violent nature did not justify Petitioner's conduct.

The evidence that Petitioner claims should have been presented to the trial court would not have altered the outcome of the trial. Therefore, defense counsel's allegedly deficient performance did not prejudice the defense, and the state appellate court did not unreasonably apply *Strickland* when it concluded that Petitioner's attorney was not ineffective.

### F.  The Sentence

The seventh and final habeas claim alleges that the trial court should have amended the judgment of sentence to remove the habitual offender designation. According to Petitioner, the prosecutor failed to show that Petitioner had been convicted of a prior felony and the trial court made no such finding.

Petitioner's claim essentially challenges the procedures used in state court to determine his status as a habitual offender. He maintained at the evidentiary hearing that the prosecutor did not request a hearing or a determination on whether Petitioner was a habitual offender and, therefore, the habitual offender designation should be deleted from his sentence. (Tr. Aug. 16,

25

2001, at 20-21, 28-29.)

In Michigan, the existence of a defendant's prior conviction must be determined by the trial court at sentencing or at a separate hearing before sentencing. MICH. COMP. LAWS. § 769.13(5). "The existence of a prior conviction may be established by any evidence that is relevant for that purpose, including information contained in the presentence report. M.C.L. § 769.13(5)(c); M.S.A. § 28.1085(5)(c)." *People v. Green*, 228 Mich. App. 684, 699; 580 N.W.2d 444, 452 (1996).

Petitioner alleges that the state appellate court erroneously concluded that the presentence information report established Petitioner's habitual offender status. He seeks an evidentiary hearing on this issue.

The "statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records." *Hardaway v. Withrow*, 305 F.3d 558, 563 (6th Cir. 2002). Even if the state courts erred, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Only errors of state law that result in a denial of fundamental fairness in violation of due process are cognizable in federal habeas corpus proceedings." *Stuart v. Wilson*, 442 F.3d 506, 513 n.3 (6th Cir. 2006).

The constitutional question is whether the trial court relied on extensively and materially false information, which Petitioner had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Defense counsel acknowledged at the final pretrial conference that Petitioner had a prior felony record, (Tr. Apr. 6, 2000, at 4), and on the first day of trial, the prosecutor stated that a habitual offender notice was included in the criminal information. (Tr. June 7,

26

2000, at 22.)  Finally, at the sentencing on July 6, 2000, the prosecutor  provided details of

Petitioner's criminal history and stated that Petitioner was a second habitual offender.  The trial

court implicitly found that Petitioner was a habitual offender.  (Tr. July 6, 2000, at 5-8 and 16.)

At no point has Petitioner questioned the validity of his prior conviction or denied that he

is a second felony offender.  No due process violation occurred, because Petitioner was not

sentenced on the basis of incorrect information, which he had no opportunity to correct.

### IV.  Conclusion

Petitioner's claims fourth and fifth claims are procedurally defaulted and his other claims

lack merit because the state court's adjudication of those claims was not objectively

unreasonable.  Accordingly, the application for a writ of habeas corpus [Doc. #1. Aug. 3, 2004]

and the motion for an evidentiary hearing [Doc. #28, Mar. 28, 2006] are DENIED.


   _/s/ Denise Page Hood_____
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated:_August 30, 2006_____


I hereby certify that a copy of the foregoing document was served upon counsel of record
on August 31, 2006, by electronic and/or ordinary mail.

S/William F. Lewis_____
Case Manager